D. R. OLMSTEAD, Appellant, v. WILLIAM J. TAYLOR, et al., Appellees.

**ACTIONS:  Nature and Form—Transfer from Law to Equity—Effect.**
1   The trial in equity of an exclusively equitable issue, interposed as a cross-petition to an action at law, may wholly defeat a trial of any of the issues at law. So held where plaintiff, in an action at law for the recovery of real property, was met by a cross-petition for the reformation of a deed and the quieting of title, the transfer of such issue to the equity calendar, and a trial there—in equity—which was determinative of the entire controversy. (Sec. 3435, Code, 1897.)

**ACTIONS:  Joinder or Counterclaim—Possession of Real Property—**
2   **Reformation of Deed.** An action at law for the recovery of real property may be very properly met, in defense, by the pleading of exclusively equitable matter as a basis for the reformation of a deed and the quieting of title so as to include the very land claimed by plaintiff. (Sec. 4182, Code, 1897.)

**ACTIONS:  Nature and Form—Transfer from Law to Equity—Erro-**
3   **neous Transfer—When Harmless.** Harmless error results from erroneously transferring both law and equity issues to the equity

calendar when the transfer of the equity issues is proper and the trial thereof is determinative of the entire controversy.

ESTOPPEL: Boundary Lines—Irrevocable Mistake—Vendor and
4  Purchaser.  A vendee who buys, pays for, takes possession of, and receives a deed to, a designated lot under its appropriate platted number, takes title- to a line definitely pointed out by the vendor as separating said purchased lot from an adjoining lot also owned by vendor, even though a later survey reveals a substantial error on the part of vendor to his great detriment. The pointing out of the line, being a vital inducement to the sale, renders the mistake irrevocable.

*Appeal from Pottawattamie District Court*—THOMAS
ARTHUR, Judge.

THURSDAY, JUNE 29, 1916.

ACTION to recover possession of real estate.  Cross-petition asking equitable relief, and that the title to this disputed tract be quieted in defendants.  Judgment and decree for the defendants on cross-petition.  Plaintiff appeals.—*Affirmed.*

*Kimball & Peterson,* for appellant.

*Tinley, Mitchell & Pryor,* for appellee.

GAYNOR, J.—This action is brought by the plaintiff at law to recover the possession of a certain strip of land alleged to be a part of Lot 3 of Auditor's Subdivision of the NE ¼ of the SE ¼ of Section 19-75-43.  Plaintiff claims that he is the owner of this lot, and that the defendants have wrongfully taken possession of, and appropriated to their own use, this strip about 55 feet wide, extending the full length of said Lot 3 on the north, and asks judgment for the possession and for damages.

The defendants admit the possession of the strip of land in controversy, but allege that they are the owners of it, and deny plaintiff's right to the possession.  Defendants thereupon filed a cross-petition against the plaintiff, in which they allege

that plaintiff was the equitable owner, and Earnest E. Hart was the legal owner, of a certain tract of land known as Lot 2, lying immediately north of and abutting upon said Lot 3; that the said Earnest E. Hart and the plaintiff made a verbal contract with the defendants, and sold to them the land in controversy in this way: Plaintiff was the equitable owner of Lot 3 aforesaid, and of this Lot 2; the land in controversy is a strip of land along the north part of Lot 3; at the time Lot 2 was sold to the defendants, the plaintiff, who was the equitable owner of both these lots, exhibited the south boundary line of Lot 2 as 25 feet south of the house; this line so pointed out was concurrent with the southerly line of the tract of land now claimed by the plaintiff; thereafter, a deed was executed, describing and conveying to defendants Lot 2; that the plaintiff represented to the defendants that the south line of Lot 2 is where the south boundary line of the tract of land claimed in plaintiff's petition is located; that the defendants relied upon this, and believed that the same was a part of Lot 2; that there was a dwelling house on the strip in dispute at the time the contract was made and the conveyance made; that defendants paid plaintiff for the tract of land so exposed to them, $2,400, and entered into the possession of it, including the land in controversy, and occupied it down to the line shown by the defendants; that the north line of the tract of land now claimed by the plaintiff as a part of Lot 3, which he says the defendants wrongfully hold, runs east and west and north of the dwelling house, and includes the dwelling house; that, if plaintiff now prevails, defendants will lose, not only the land, but this house, pointed out to them as being upon the land purchased; that the boundary line, as pointed out, was 25 feet south of this house; that, when the deed was made, it described Lot 2 as originally platted, but, by oversight and mistake, failed to describe the land in controversy, being the land pointed out and actually sold by the plaintiff and Hart to the defendants.

The defendants in their cross-petition pray that the deed

be reformed and be made to cover this particular land in controversy, which it was the purpose and intent of the parties to have conveyed thereby, and ask that said deed be reformed, and the title be quieted in the defendants.

Plaintiff, answering the cross-petition, denies all the allegations thereof, and pleads adverse possession for the statutory period; alleges that he was the owner of Lot 3, and that this land is a part of Lot 3, and was never conveyed to the defendants.

Upon motion of the defendants, this cross-petition was transferred to the equity side for trial, and the cause was so tried and determined. Of this, the plaintiff complains. The cross-petition clearly presents an equitable cause of action in favor of the defendants against the plaintiff. It was rightfully transferred to equity for trial, under the provisions of Section 3435, Code, 1897, which provides:

1. ACTIONS: nature and form: transfer from law to equity: effect.

"Where the action has been properly commenced by ordinary proceedings, either party shall have the right, by motion, to have any issue heretofore exclusively cognizable in equity tried in the manner hereinafter prescribed in cases of equitable proceedings."

The action of the court did not deprive the plaintiff of a right to trial upon the legal issue presented in his petition, but postponed a hearing upon that issue until the equitable matter alleged in the cross-petition had been determined. If, then, there remained anything for consideration on the law side of the calendar, plaintiff could have had his action presented at law. But if, as a matter of law and principle, the equitable issue disposed of the full controversy, there is nothing left for trial at law, and that would be true in this case. If the defendants succeeded in establishing the allegations of their cross-petition, there was no case left for the plaintiff to dispose of on the law side of the calendar. See *Hackett v. High*, 28 Iowa 539. If defendants succeeded in establishing the allegations of their cross-petition and securing the relief

therein prayed for, then their possession was not unlawful or wrongful, and the plaintiff had no right to maintain the action at law for the recovery of the possession of the property.

While the appellant commenced this action at law to recover the possession of this strip of ground, and asked damages, and, while this was a matter for the jurisdiction of the law court, his claim to possession rested

2. ACTIONS: join-
der or counter-
claim: posses-
sion of real
property: refor-
mation of deed.

on the underlying thought that this strip of land in controversy was a part of Lot 3, and was not a part of Lot 2, and that the conveyance of Lot 2 did not pass to these defendants any right to this strip of land. If, however, it was made to appear that, notwithstanding the fact that the deed simply described Lot 2 as platted, the plaintiff sold to the defendants this land in controversy as a part of Lot 2, and pointed out the south line of the land in controversy as the south line of Lot 2, and the defendants purchased and paid the plaintiff for this land on the assumption that it was a part of the land purchased, and took possession and paid the price, it would seem to be an equitable defense to plaintiff's claim, or, rather, the allegation of affirmative matter which defeated plaintiff's claim. The fact was pleaded in the cross-petition that the defendants purchased from the plaintiff a tract of land having particular boundaries, including a particular house, with the obligation on the part of the plaintiff to construct a cistern on this land in controversy, and that appellees parted with their money in the belief, induced by plaintiff's conduct, that this strip in controversy was a part of the land purchased by the defendants. If this be true, defendants are clearly in a position to maintain their possession. If defendants' contention is true, the plaintiff pointed out to them the south line of the land in controversy as the south line of the land purchased by them from the plaintiff. On this land was a house, and defendants, in pursuance of their purchase, entered upon and took possession of this house and of this land in controversy. The possession came to them in fulfillment of their

purchase, and it was under their purchase that they took the possession. So much for this contention of the plaintiff's.

It is true that only the equitable matter involved in the cross-petition should have been transferred to the equity side for trial; and, if that equitable issue were decided adversely to the defendants, the plaintiff would be entitled to a hearing upon the allegations of his original petition, and the issue joined thereon; or, in other words, would be entitled to a jury trial upon that issue. But if the disposition of the matters involved in the cross-petition, determined adversely to the plaintiff, settled the whole controversy, there was no prejudicial error on the part of the court in transferring the entire cause to the equity side. It would be error, but error without prejudice; and as we proceed, it will become more apparent that this error was without prejudice to the plaintiff.

3. ACTIONS: nature and form: transfer from law to equity: erroneous transfer: when harmless.

The evidence of the plaintiff discloses that he and the defendants talked about the sale and purchase of this property; that they went to the property; that the plaintiff showed this property to the defendants, and the house that is now upon it, and the house that the defendants now occupy. He testified as follows:

4. ESTOPPEL: boundary lines: irrevocable mistake: vendor and purchaser.

"The line between Lot 2 and Lot 3, as surveyed, is north of the house, so that the house would not be on the land I sold him. I showed him the house because I supposed it to be on the seven acres of land I was selling him. I intended to sell him the house—that was the reason I showed it to him. I also showed him the line south of the house, and that was the line I claim as the division line between Lots 2 and 3; that line was 16 feet south from the front corner of the house, 16 feet from the apple tree. I made no claim to the house or the land north of that line until the survey. I occupied up to that line and he occupied down to that line. At the time, I agreed to paint the house, roof the house and put

eaves on the house. Exhibit 2 is the contract with Mr. Taylor, signed by me, and that agreement was made in Mr. Hart's office. After we talked the deal over and I showed him the line, we went down to Mr. Hart's office and I priced the land to him. I told him how much I would take for the land. According to Exhibit 2, I agreed to build a cistern for him. I did build the cistern on the land I intended to deed to him, and that was on the land I showed him. The surveyed line now runs north of the cistern, so that it divides the cistern to one half on Lot 2 and one half on Lot 3, and that is the cistern I agreed to build for him. When I built the cistern, I did not suppose I was building one half of it on mine and one half of it on his land, but supposed I was building the cistern on the land I sold to him. We both understood it that way. I pointed out the line to him when I was showing him the land and tried to sell it to him. I got the money for the land. I suppose the description in the deed carried it down to about the line I showed Mr. Taylor, and told him it might vary from that a foot one way or the other. When the deed was made out to Mr. Taylor and I took the money, I supposed the description in the deed carried it down to the line I was showing him. It was not my intention to sell him the house and then take it away from him, nor was it my intention to agree to build a cistern and then destroy the cistern. It was my intention to deed to him the property, including the part upon which the house stood and where the cistern was built and down to the line I showed him. When I had the survey made, I called up Mrs. Taylor and told her that the house was over on my property. At a later interview, I told them they would have to get off the land or pay for it. At that time, they were on the land that I thought I sold them. After the survey, I wanted them to get off of the land that I thought I had sold them. I did not tell them I would give them back part of the money. Under the circumstances, that is my idea of a square deal. After the Taylors bought the property, they put a roadway south

of the house leading from the highway. I first saw the defendant about selling him Lot 2 at my son's place on Broadway. At that time, I was owing Mr. Hart $6,600, and this covered the home place, as well as Lot 2. I was owing Mr. Hart $1,500 on Lot 2. When Lot 2 was sold to the defendant, I got credit on my debt to Mr. Hart for $2,400, less some expense of about $100.''

The plaintiff further testified that the Taylors bought this Lot 2 in March, 1908, and moved thereon the following spring; that he (the plaintiff) still had possession of Lot 3; that he acquired an interest in this Lot 2 about 15 years ago; that he was using this Lot 2 at the time he sold it to the Taylors; that the legal title to Lot 2 stood in Mr. Hart; that the deed to the plaintiff was executed by him.

It appears that the defendants, after having purchased this land from the plaintiff—this lot, including the land in controversy—took possession of this land before the deed from Hart was executed.

Upon this record, we have the following facts: Hart held the legal title to Lot 2. Plaintiff was the equitable owner of Lots 2 and 3. Defendants desired to purchase the land north of plaintiff's Lot 3. The plaintiff took the defendants to the land, and pointed out the line between the lands. This line, as a matter of fact, was several feet south of the south line of Lot 2 as platted. On the land pointed out, and on the land now claimed by plaintiff, was the house. Plaintiff pointed to the south line of the land sold by him to the defendants. The land in dispute is north of this line. Plaintiff not only pointed out the distance, but measured it, and told the defendants that the line of the land which they were purchasing was somewhere about 16 feet south of the south line of the house. Defendants bought, paid for, and took possession of the land pointed out by the plaintiff to them. It was the understanding of both parties that defendants purchased to the line pointed out by the plaintiff, and when they paid

for it, it was understood by both parties that the payment was made for the land to the line pointed out by plaintiff. When they took possession, it was the understanding of both parties that the defendants had purchased to the line pointed out by the plaintiff. They have occupied the land so pointed out and purchased and paid for, ever since it was purchased. Plaintiff never claimed north of the line pointed out by him until some three years afterwards, when he made a survey, and claims to have discovered that the south line of Lot 2 was 55 feet north of the line pointed out by him. His contention is that the defendants bought only Lot 2; that the only written evidence of their purchase is the deed to Lot 2; that they cannot now claim more, because they have no written evidence that they purchased more than Lot 2. The land pointed out by the plaintiff was a physical entity. By designating the south line of the land purchased by the defendants, the plaintiff fixed the south line of the land sold to the defendants, and paid for by them. With the consent of the plaintiff, possession was given of this disputed tract. Possession has ever since been maintained. The plaintiff has never returned, nor offered to return, any of the consideration paid. The defendants purchased, paid for, and took possession of the disputed land, and they need no further evidence of title. It was the intention of the plaintiff to sell to this line designated by him, and the intention of the defendants to purchase to this line. There was no mistake as to the physical entity of the land sold and purchased, taken possession of, and paid for. Defendants are clearly entitled to have the title to the land so purchased, paid for, and now in their possession, quieted in them. This the court did, and rightly so. The plaintiff is now estopped from asserting any claim to the land so pointed out to the defendants and so purchased and paid for by the defendants, under the circumstances of this case. All the equities are with the defendants. As bearing upon this question, see *Ross v. Ferree*, 95 Iowa 604, and authorities cited therein.

Upon the whole case, we think the judgment of the court below is right, and it is—*Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.