Gilbert B. **MORNINGSTAR** and Evelyn Morningstar, Appellants,

v.

Lovell **MYERS,** John D. Randall and Myers Farms, Inc., Appellees.

No. 2–58682.

Supreme Court of Iowa.

June 29, 1977.

Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellants.

John D. Randall and Ronald W. Wendt, Cedar Rapids, for appellee Myers Farms, Inc.

David M. Elderkin, Cedar Rapids, for appellee John D. Randall.

Richard F. Nazette, Cedar Rapids, for appellee Lovell Myers.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

LeGRAND, Justice.

This matter is here with our permission on an interlocutory appeal from an order of the Linn District Court which plaintiffs say deprives them of their right to trial by jury. We reverse and remand for further proceedings as directed herein.

Plaintiffs filed an action at law, asking both compensatory and punitive damages for alleged fraud in certain dealings involving title to a farm in Linn County. We briefly outline the circumstances underlying this controversy.

Myers Farms, Inc. is an Iowa corporation. Lovell Myers was its president and John D. Randall its secretary-treasurer. Gilbert Morningstar was employed by the corporation. We refer to the plaintiffs jointly as Morningstar.

On February 29, 1956, Morningstar acquired fee simple title to the farm by warranty deed. One day earlier, on February 28, 1956, Morningstar had conveyed the real estate to Myers and Randall by an unrecorded warranty deed.

The petition alleges that in 1967 Lovell Myers forged Morningstar's signature to a warranty deed purporting to convey this same real estate to Myers Farms, Inc. Shortly before the execution of this deed, Myers Farms, Inc. had executed a mortgage to Metropolitan Life Insurance Company for $90,000 encumbering this and other real estate. In 1973 Myers Farms, Inc., by its corporate officers, reconveyed the real estate to Morningstar by quit claim deed.

The petition asks that Myers Farms, Inc. account for the rents and profits from this real estate during the time plaintiffs were wrongfully deprived of it and also that the cloud of the Metropolitan Life mortgage be removed from their title. The petition asks $90,000 compensatory damages and $250,000 exemplary damages.

Each of the three defendants filed separate answers which contained similar denials and affirmative defenses. In essence, these answers set up as a defense that Morningstar never had any beneficial interest in this real estate; that Gilbert Morningstar was employed by the defendants and that title was put in his name for convenience; and that the property was always that of the defendants Myers and Randall. The answers also deny either knowledge of the alleged forgery or (in the answer of Lovell Myers) the forgery itself.

The answers also allege that the reconveyance by quit claim deed in 1973 was the

result of duress and that the deed "gave Morningstar no right in the lands" conveyed.

The defendants each ask $10,000 actual damages and $250,000 exemplary damages from plaintiffs.

The defendants John D. Randall and Lovell Myers also filed a cross-claim asking that title to the real estate be quieted in them. They rest this on the unrecorded warranty deed from Morningstar dated February 28, 1956. They pray that title in the real estate be quieted in Myers and Randall against any claims of Morningstar.

It is the filing of these cross-petitioners which occasioned the problems giving rise to this appeal. Upon motion of Randall and Myers, without objection from Morningstar, the cross-petitions to quiet title were separated from the main action for trial. Later, after hearing, the court assigned the cross-petitions for trial in equity before trial of the law action to a jury.

Morningstar alleges this order denies his right of trial by jury. He argues a determination in the quiet title action will dispose of the vital issue in the law action—whether the asserted title of defendants rests on a forged deed—and that he is entitled to a jury trial on that question.

Our rules provide for a splitting of issues when some are triable at law and some in equity. *See* Rules 177 and 178, Rules of Civil Procedure. The causes were split here without objection. The dispute concerns, not the splitting of the issues for trial, but rather the order in which this is to be done.

■ This is a matter which lies within the trial court's discretion and ordinarily is to be decided on considerations of efficiency, conservation of judicial time and avoidance of multiple trials. However, right to trial by jury is to be preserved and should not be impaired except for compelling reasons. *Conrad v. Dorweiler*, 189 N.W.2d 537, 539 (Iowa 1971).

Although it has been said that equitable issues should be tried first, this is not an inflexible rule. We have several times expressed the view that the case which is most likely to dispose of the whole controversy should be tried first in order to avoid an unnecessary second trial. *Midwest State Bank v. Struble*, 197 Iowa 304, 308, 197 N.W. 11, 12 (1924); *Tinker v. Farmers State Bank*, 178 Iowa 972, 982–983, 160 N.W. 349, 352 (1916). *See also Olmstead v. Taylor,,* 177 Iowa 186, 189, 158 N.W. 587, 588 (1916) where we said:

"The action of the court did not deprive the plaintiff of a right to trial upon the legal issues presented in his petition, but postponed a hearing upon that issue until the equitable matter alleged in the cross-petition had been determined. If, then, there remained anything for consideration on the law side of the calendar, plaintiff could have had his action presented at law. But if, as a matter of law and principle, the equitable issue disposed of the full controversy, there is nothing left for trial at law, and that would be true in this case. If the defendants succeeded in establishing the allegations of their cross-petition, there was no case left for the plaintiff to dispose of on the law side of the calendar. * * * If defendants succeeded in establishing the allegations of their cross-petition and securing the relief therein prayed for, then their possession was not unlawful or wrongful, and the plaintiff had no right to maintain the action at law for the recovery of the possession of the property."

■ The parties do not disagree so much on these principles, but each claims they should be applied in his favor under the facts before us.

Defendants insist their quiet title action is completely separate and distinct from Morningstar's action for damages. They argue they rely solely on the 1956 deed from Morningstar. If successful in their action, they say Morningstar has no action for fraud because he would then have had no title which could have been transferred by a forged instrument. They go on to say a resolution of the quiet title issue will go far toward disposing of the whole controversy.

This argument has superficial appeal, but it does not answer the real problem. The 1956 deed upon which Myers and Randall rely cannot establish their right to title *now*. Even assuming the 1956 deed did what they claim for it, a deed executed in 1973 from Myers Farms, Inc. conveyed title to Morningstar. (We disregard for present purposes the corporate identity as distinct from Myers and Randall.)

This deed is said to have been the result of duress. Once this is opened up, there is no way to limit the issues to avoid the question of the 1967 deed which is said to have been forged . We are convinced evidence of all dealings between these people will be in the record if the quiet title action is tried first.

Under these circumstances we are persuaded the trial court erred in ordering the quiet title action tried first. Morningstar should have his jury trial on the fraud issue. Not only will that probably dispose of the whole case, but the opposite result effectively takes away Morningstar's right to trial by jury.

We reverse the trial court's order and remand with instructions that the law action be tried before the quiet title action.

REVERSED AND REMANDED.