# IN THE COURT OF APPEALS OF IOWA

No. 23-1845
Filed February 5, 2025

**MARK FINK and STACY FINK,**
        Plaintiffs-Appellees,

**vs.**

**DONALD LAWSON and LINDA LAWSON,**
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Delaware County,
Margaret L. Lingreen, Judge.


        Land purchasers appeal the district court's orders denying their claims of
an easement over their adjoining neighbors' property.  **AFFIRMED IN PART,
REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**


        Matthew J. Haindfield of Dickinson, Bradshaw, Fowler & Hagen, P.C., Des
Moines, for appellants.

        Abram V. Carls and Joseph J. Porter of Simmons Perrine Moyer Bergman
P.L.C., Cedar Rapids, for appellees.


        Heard by Ahlers, P.J., and Badding and Buller, JJ.

**AHLERS, Presiding Judge.**

Donald and Linda Lawson bought their home on lot 21 of the H.L.C. second subdivision development in 2002 from the Mary L. Becker Trust. Just forty-six days prior, the trust received the title to the property from another individual, the son of the trust's co-trustees, who built the home on the property in 1987. The home was vacant when the Lawsons purchased it.

At the time the Lawsons purchased lot 21, they received a written and signed easement agreement from the Mary L. Becker Trust purporting to grant an easement across neighboring property (lots 19 and 20) to provide the Lawsons with access to a dock on Lake Delhi (a lake formed by the damming of the Maquoketa River). However, the Mary L. Becker Trust did not own lots 19 and 20. The Larry D. Becker Trust owned those lots. Nor did the described easement describe land that reached the lake. These problems with the easement agreement did not cause any issue for several years. Mary and Larry Becker— the co-trustees of the Larry D. Becker Trust and the Mary L. Becker Trust—had a nearby residence and permitted the Lawsons to traverse lots 19 and 20 to access the dock on Lake Delhi for almost two decades, albeit along a path that differed from that described in the purported easement agreement. The following image is exhibit 18, on which we have identified the lots at issue in red:



EXHIBIT 018 - 2

In 2015, the Larry D. Becker Trust sold lots 19 and 20 to XL Investments, LLC, a limited lability company whose members were the Beckers' children.[1]  Then in 2021, Mark and Kelly Fink purchased lots 19 and 20 from XL Investments with the intention of building a home on the land.[2]

The Finks brought this action to quiet title to lots 19 and 20 as well as tort claims against the Lawsons.  The district court bifurcated the proceedings, separating the quiet-title claim from the tort claims.  The Finks filed a motion for summary judgment seeking to dispose of some of the Lawsons' easement claims asserted as defenses.  The district court granted the motion in part and denied it in part.[3]

---

[1] By some time in 2015 both Mary and Larry Becker had passed away.

[2] The Finks also purchased lots 17 and 18 at the same time.

[3] The Lawsons filed a motion to amend and enlarge following the court's summary judgment ruling, which the Finks resisted.  The district court granted that motion in part and denied it in part.

For trial, the district court heard the quiet-title claim first and then set the tort claims for a later jury trial. Following the bench trial on the quiet-title claims, the court agreed to reconsider its summary judgment ruling but ultimately entered a decree in favor of the Finks determining that the Lawsons had no valid easement over lots 19 and 20.[4] The Lawsons filed a notice of appeal. Because the tort claims raised in the Finks' petition have not been resolved, our supreme court treated their notice of appeal as an application for interlocutory review, granted the application, and transferred the appeal to this court.

## I. Standards of Review

Quiet-title actions are equitable proceedings, *see* Iowa Code § 649.6 (2021), so our review of the merits is de novo. *See Sille v. Shaffer*, 297 N.W.2d 379, 380 (Iowa 1980). With de novo review, we give weight to the district court's factual findings, especially concerning witness credibility, but we are not bound by them. *McNaughten v. Chartier*, 977 N.W.2d 1, 8 (Iowa 2022).

For claims resolved on summary judgment, we review for legal error. *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). "Summary judgment is appropriate only when the entire record demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.*; Iowa R. Civ. P. 1.981(3).

Issues relating to the district court's bifurcation of proceedings are reviewed for an abuse of discretion. *See Homeland Energy Sols., LLC v. Retterath*, 938

---

[4] The Lawsons again filed a motion to amend and enlarge the court's ruling, and the Finks again resisted. The district court granted the motion in part, though it did not change the outcome of the proceeding.

N.W.2d 664, 683 (Iowa 2020) ("Bifurcation of a trial is a discretionary matter, which we review for an abuse of discretion."). "A court abuses its discretion when its ruling is based on grounds that are unreasonable or untenable." *In re Tr. No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013).

## II.     Discussion

This case turns on whether the Lawsons had an easement over lots 19 and 20 to access a dock on the shore of Lake Delhi. We recognize "[t]here are four ways to create an easement: (1) by express grant or reservation, (2) by prescription, (3) by necessity, and (4) by implication." *Nichols v. City of Evansdale*, 687 N.W.2d 562, 568 (Iowa 2004). The Lawsons contend the district court should have recognized an easement under multiple theories.

### A.     Reformation to establish an express easement

First, the Lawsons contend that the district court should have reformed the easement granted by the Mary L. Becker Trust in 2002 to change the granting party from the Mary L. Becker Trust to the Larry D. Becker Trust. They contend that because Mary Becker was a co-trustee of both trusts when she signed the easement agreement, her intention to grant an easement over lots 19 and 20 was clear and that intent must be honored. This would provide the Lawsons with an express easement over lots 19 and 20, though that easement still would not grant them access to the dock given its description.

The Finks argue that this claim is not preserved. But the Lawsons argued reformation was necessary in multiple filings, at a summary judgment hearing, and at trial. The district court declined to reform the contract when ruling on the motion for summary judgment and again when ruling on the Lawsons' subsequent Iowa

Rule of Civil Procedure 1.904 motion.  Accordingly, we conclude this issue is preserved for our review.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

As to the merits of the Lawsons' claim, they cannot succeed.  Reformation is only proper after the requesting party has established clear and convincing proof that the reformed agreement would reflect "the agreement of the parties and not mak[e] a new agreement."  *Gouge v. McNamara*, 586 N.W.2d 710, 714 (Iowa Ct. App. 1998).  Put another way, reformation is warranted when there is simply a mistake in the expression of an agreement.  *See Nichols*, 687 N.W.2d at 570.  "Mistake in expression, or integration, occurs when the parties reach an agreement but fail to accurately express it in writing."  *Id.* (citation omitted).  Yet the Lawsons seek reformation to change the parties to the original easement agreement, not just the terms of the agreement.  That would effectively create a new easement agreement, which is not permissible.

The district court correctly denied the Lawsons' requests to reform the original easement agreement to change the parties to that agreement.

**B.      Easement by implication and the "control test"**

"An easement by implication is one [that] the law imposes by inferring the parties to a transaction intended that result, although they did not express it." *Brede v. Koop*, 706 N.W.2d 824, 830 (Iowa 2005) (citation omitted).  An easement by implication arises under the following conditions:

> (1) a separation of the title; (2) a showing that, before the separation took place, the use giving rise to the easement was so long continued and obvious that it was manifest it was intended to be permanent; and (3) it must appear that the easement is continuous

> rather than temporary, and (4) that it is essential to the beneficial enjoyment of the land granted or retained.

*Id.* (citation omitted).

The Lawsons' contend the district court should have adopted and applied the "control test" to conclude they had an easement by implication. The Finks respond that even if the court were to adopt and apply the control test it could not grant the Lawsons an easement by implication.

Under the first element necessary to establish an easement by implication, "a separation of the title," *see id.*, an entity must first have unity of ownership of the properties to then be able to separate the titles. Here, there was no unity of ownership because the Mary L. Becker Trust owned lot 21 while the Larry D. Becker Trust owned lots 19 and 20 at the time the Lawsons purchased lot 21. This seemingly forecloses the Lawsons' efforts to establish an easement by implication, as they cannot establish the first element. *See id.*

But this is where the Lawsons argue the "control test" should be adopted and applied to find unity of ownership. Under this test, unity of ownership is not examined so literally; instead it requires the examining court to look at who has actual control over the properties and find unity of ownership when those who have actual control of the properties are the same. *See, e.g., Houston Bellaire, Ltd. v. TCP LB Portfolio I, L.P.*, 981 S.W.2d 916, 920–21 (Tex. App. 1998). Because Mary Becker and Larry Becker served as the co-trustees to both the Mary L. Becker Trust (owner of lot 21) and Larry D. Becker Trust (owner of lots 19 and 20), the Lawsons argue when the control test is applied there was a unity of ownership between the properties.

We agree with the Lawsons that if we were to adopt the control test and apply it, there would be unity of ownership in this instance and subsequent separation of title when the Lawsons purchased lot 21 in 2002. That would satisfy the first element of an easement by implication. *See Brede*, 706 N.W.2d at 830. But they would then run into a critical snag with respect to the second element, which requires "a showing that, before the separation took place, the use giving rise to the easement was so long continued and obvious that it was manifest it was intended to be permanent." *Id.*

Assuming for the sake of discussion that lots 19, 20, and 21 were functionally owned by the same entity under the control test because the trusts had identical co-trustees who had identical control over all the lots, when the same entity owns both the dominant and servient properties, any easement that previously existed is extinguished. *See Sundance Land Co., LLC v. Remmark*, 8 N.W.3d 145, 153 (Iowa 2024); *see also Gray v. Osborn*, 739 N.W.2d 855, 862 (Iowa 2007); *McKee v. City of Council Bluffs*, No. 21-1117, 2022 WL 2160681, at *3 (Iowa Ct. App. June 15, 2022). When separate ownership of the properties resumes, the easement must be reestablished. *Sundance*, 8 N.W.3d. at 154.

So any use by the Beckers' son when he previously owned lot 21 (before the forty-six-day window when the trusts owned all three lots) cannot be relied upon by the Lawsons to satisfy the second element. *See id.* Instead, they must be able to establish an easement through subsequent use that "was so long continued and obvious that it was manifest it was intended to be permanent." *See Brede*, 706 N.W.2d at 830. They cannot do so. The applicable trust only had title to lot 21 for forty-six days before it was conveyed to the Lawsons. So the Lawsons

only had a forty-six-day window to show long and continuous use of the path to the dock before the point of separation of title. The Beckers mainly lived in Evansdale, had their own cabin in the area, and used a different boat dock. There is no evidence that anyone used the path from lot 21 cutting through lots 19 and 20 during the forty-six days the trusts owned lots 19, 20, and 21. As such, even if we were to adopt the control test as the Lawsons urge, they could not satisfy the second element necessary for an easement by implication.

Because the Lawsons cannot establish an easement by implication regardless of whether we adopt the control test, we leave the question of whether to adopt the control test for another case.

### C. Prescriptive easement

"Under Iowa law, an easement by prescription is created when a person uses another's land under a claim of right or color of title, openly, notoriously, continuously, and hostilely for ten years or more." *Johnson v. Kaster*, 637 N.W.2d 174, 178 (Iowa 2001). In its summary judgment ruling, the district court rejected Lawsons' prescriptive-easement argument because the Lawsons' failed to present a question of material fact with respect to whether their use of the path to the dock was hostile; it did not discuss the Lawsons' ability to establish the remaining elements.

In its ruling following trial, the district court "affirm[ed] its earlier summary judgment 'Motion Ruling' wherein judgment was entered in favor of [the Finks] as to [the Lawsons'] affirmative defense[] of . . . prescriptive easement . . . ." In doing so, the district court provided no additional prescriptive-easement analysis. Accordingly, we interpret the district court's post-trial ruling as simply affirming its

prior summary judgment ruling rather than reconsidering the Lawsons' prescriptive-easement affirmative defense anew following trial.[5] As such, we apply summary judgment standards to the Lawsons' prescriptive-easement defense.

On appeal, the Lawsons argue that the district court "wrongfully granted summary judgment on the[ir] traditional prescriptive easement claim" and request that we "reverse the district court and remand this case for further proceedings accordingly." On this point, we agree. In the summary judgment ruling, the district court stated that "the Lawsons used the worn path to access the Maquoketa River with the consent of the Beckers; the Lawsons' use of the path was not hostile" and in its ruling on the rule 1.904 motion the court reiterated that the Lawsons' "use of the path they took to the dock was with the Beckers' consent." For this reason, the district court concluded that the Lawsons could not establish the hostility element of their prescriptive-easement defense. But when reviewing the summary judgment record in the light most favorable to the Lawsons as the non-moving party, we conclude that a fact question remains as to whether the Lawsons used the path to the dock with the permission of the Beckers.

The Finks point to Linda Lawson's deposition testimony to argue the hostility element of the prescriptive-easement defense is lacking. They highlight her testimony that the Beckers gave the Lawsons permission to use the path. But in doing so, the Finks take her words out of context. Counsel asked Linda about an answer she provided to an interrogatory, "The Beckers further advised us that we

---

[5] In so doing, we reject the Finks' claim that the Lawsons' prescriptive-easement defense must fail because they did not present evidence of all the elements of a prescriptive easement at trial. At the time of trial, the prescriptive-easement defense was off the table following the district court's summary judgment ruling.

would always have access to the water via the perpetual easement to the dock. Do you remember the Beckers advising you of that?" Linda responded, "Yes." Counsel then asked, "And so would it be fair to say that the Beckers gave you and your husband permission to cross their property like you're using it now?" Linda again responded, "Yes." Then she went on to explain that the Beckers gave them permission to use a nearby access road. Viewing this evidence in the light most favorable to the Lawsons, a reasonable fact finder could conclude this testimony shows that the Beckers did not give the Lawsons permission to use the path to the dock and instead believed the Lawsons had the right to use it by way of an easement. Further, during his deposition, Donald Lawson explained that they used the path to the dock because the Beckers explained to them that would be their easement: "We followed the easement that we were shown . . . [by] the Beckers right away."

When viewing this evidence in the light most favorable to the Lawsons, a fact question remains as to whether both the Beckers and the Lawsons believed that the Lawsons had an easement for the path to the dock and both families acted accordingly. The district court's review of the summary judgment record failed to consider the deposition statements within their full context, which leaves open the possibility that the Beckers did not simply give the Lawsons permission to use the path to the dock.

And the hostility element of a prescriptive easement does not require any showing of ill-will or animus—it only requires "declarations or acts revealing a claim of exclusive right to the land." *Collings Tr. v. Allamakee Cnty. Bd. of Supervisors*, 599 N.W.2d 460, 464 (Iowa 1999). When reviewing the summary judgment record

in the light most favorable to the Lawsons, there is evidence of such declarations or acts sufficient to generate a fact question as to the hostility element. As such, the district court erred by granting the Finks motion for summary judgment on this issue. We reverse the district court's summary judgment ruling rejecting the Lawsons' prescriptive-easement affirmative defense and remand for further proceedings on this issue.

### D. Modified prescriptive easement

The Lawsons also contend this is one of those instances when we should apply a more relaxed standard for a prescriptive easement. "Prescriptive easements based on this relaxed standard 'are determined either on the theory of a valid executed oral agreement or on the principle of estoppel.'" *Brede*, 706 N.W.2d at 827 (citation omitted).

> Under this exception to the strict rules governing prescriptive easements, an easement by prescription may arise
> in those instances in which the original entry upon the lands of another is under an oral agreement or express consent of the servient owner and the party claiming the easement expends substantial money or labor to promote the claimed use in reliance upon the consent or as consideration for the agreement.

*Id.* (citation omitted). However, money and labor expended must be more than necessary to merely carry out the permissive use. *See id.* at 829. For example, in *Brede* the party seeking establishment of a prescriptive easement tried to rely on their and their predecessors' practice of periodically adding and grading gravel to a gravel driveway. *Id.* But our supreme court viewed these efforts as simply ensuring that the gravel driveway was usable. *Id.* Because those efforts amounted only to "maintenance of the driveway . . . consistent with their permissive use" it

was "not sufficient to put [the driveway owner] on notice that they claimed an easement in the driveway." *Id.*

The Lawsons point out that they maintained the path to the dock for almost twenty years. In doing so, they mowed the grass along the path, occasionally put down grass seed, raked leaves, and hauled in "dirt and other fill material" to the path. The dirt fill cost them a few thousand dollars in total over these many years. But they brought in the dirt and fill material to fill in spots that had been washed out along the path as rain drained down the sloped path toward the lake. We view these efforts as basic maintenance work—without it the path would be washed out and presumably not useable. *See id.* As such the Lawsons' efforts to maintain the path to the dock are not sufficient to determine they have a modified prescriptive easement.

### E.     Easement by acquiescence

The Lawsons next contend that the district court should have recognized an easement by acquiescence. But one cannot establish a new easement through easement by acquiescence. *Slechta v. Jewett*, No. 12-1499, 2013 WL 5962924, at *3 (Iowa Ct. App. Nov. 6, 2013) (recognizing the supreme court has identified four ways to establish an easement and those do not include easement by acquiescence). The Lawsons claim they are not asking for the establishment of a new easement, rather they are attempting to shift the boundaries of the easement purportedly granted by the Mary L. Becker Trust over lots 19 and 20 to the boundaries of the path to the lake. But that purported easement was never valid because the Mary L. Becker Trust never owned lots 19 and 20 as previously

discussed. So there is no valid and existing easement to modify through acquiescence.

## F.   Order of proceedings

Finally, the Lawsons shift focus to a procedural issue and claim the court erred by resolving the quiet title portion of the Finks' petition before the jury trial on their tort claims. They argue that *Morningstar v. Myers*, 255 N.W.2d 159 (1977) mandates that the tort claims be tried to a jury first. The Lawsons contend that the district court's factual findings in the quiet-title action on several "topics" "will likely have preclusive effect on the subsequent jury proceedings" and deprive them of their constitutional right to have a jury of their peers make the relevant factual findings in the tort action.

The Lawsons misread *Morningstar*. In fact, *Morningstar* recognized that equitable issues should generally be tried first. 255 N.W.2d at 161. It just so happened in that case that resolution of the quiet-title issue—the equitable issue— would necessarily decide the forged-deed issue that accounted for the entirety of the fraud claim. *Id.* at 161–62. As such, it was necessary to try the fraud claim first so that it could be resolved by a jury. *Id.* at 162. There is no such significant factual overlap here between the quiet-title issue for lots 19 and 20 and the Finks' tort claims for trespass, conversion, and invasion of privacy. In other words, quieting title on lots 19 and 20 first does not necessarily likewise resolve the tort claims, which will require a different presentation of evidence that focuses on events after the Finks purchased lots 19 and 20.

*Morningstar* did not require the district court to set the jury trial on the tort claims before the quiet-title proceedings. We conclude that the district court did

not abuse its discretion when bifurcating the proceedings and addressing the quiet-title issue first.

## III.    Conclusion

We reject the Lawsons' reformation argument and find they do not have an express easement.  The Lawsons do not have an easement by implication, and we decline to decide whether to adopt the control test.  The Lawsons cannot establish a modified prescriptive easement or an easement by acquiescence.  The district court did not abuse its discretion when it bifurcated the quiet-title issue from the tort issues and addressed the quiet-title issue first.  However, the district court erred when it granted summary judgment rejecting the Lawsons' prescriptive-easement affirmative defense.  We affirm in part, reverse in part, and remand to the district court for further proceedings.

**AFFIMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**