STATE of Iowa, Appellee,

v.

**Mark Douglas OLSEN, Appellant.**

No. 99–367.

Supreme Court of Iowa.

Oct. 11, 2000.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Denver D. Dillard, County Attorney, and Jerry Vander Sanden, Assistant County Attorney, for appellee.

CADY, Justice.

This appeal requires us to determine if a home repair scam involving repeated acts of theft by deception over an extended period of time violates Iowa's ongoing criminal conduct statute. We conclude it does and affirm the judgment and sentence of the district court.

### I. Background Facts and Proceedings.

Mark Olsen operated a home improvement business in Cedar Rapids. He was assisted by his live-in girlfriend, Jennifer Wagner. In September 1996, Olsen contacted Virginia Detlefs to solicit work. Detlefs invited Olsen to her home to determine if it needed repair. Detlefs was eighty-one years old. She lived by herself in a small ranch-style home in the southeast part of Cedar Rapids. She was susceptible to suggestion and influence.

Olsen initially agreed to paint the interior of the house, finish the woodwork and wood floors, clean the carpet, and wash the windows. He estimated the work would cost $6000. That initial job, however, was only a beginning.

Over the next nineteen months, Olsen and Wagner convinced Detlefs to pay them more than $200,000, ostensibly for performing work on her home. There was, however, little or no work performed.

A neighbor became suspicious after repeatedly observing Olsen and Wagner going to Detlefs' house several times a week for short periods of time. The neighbor was unable to observe any new construction on the house or any signs of home improvement work. The neighbor eventually contacted the police after viewing Det-

lefs' check register and finding numerous checks and cash withdrawals to Olsen.

Olsen confessed to deceiving Detlefs by operating a scam in response to questioning by police. He admitted that he had received between $35,000 and $50,000 from Detlefs from September 1996 to April 1998 for work he never performed and supplies he never used. A police investigator later determined Detlefs wrote checks to Olsen and Wagner, or gave them cash, on more than ninety occasions totaling $201,628.40. Olsen used the money to support his cocaine habit and for living expenses.

The State charged Olsen with the offense of ongoing criminal conduct under Iowa Code section 706A.2(4) (1997), based on the predicate offense of theft by deception under section 714.1(3). He was found guilty of the crime following a bench trial. The district court determined Olsen acted in concert with another person to commit theft by deception for financial gain on a continuing basis. Olsen was sentenced to an indeterminate term of incarceration not to exceed twenty-five years. He was also ordered to make restitution.

Olsen appeals. He challenges the sufficiency of the evidence to support the conviction. Specifically, he claims the ongoing criminal conduct statute was intended to apply to racketeering crimes only and there was no evidence presented by the State to show he was part of a criminal network or engaged in an illegal enterprise for financial gain within the contemplation of the statute.

## II. Scope of Review.

We review a challenge to the sufficiency of the evidence for correction of errors at law. *State v. Hopkins*, 576 N.W.2d 374, 377 (Iowa 1998). Similarly, issues of statutory interpretation are reviewed for correction of errors at law.

*State v. Kotlers*, 589 N.W.2d 736, 738 (Iowa 1999).

## III. Ongoing Criminal Conduct Statute.

We have not previously had an opportunity to consider Iowa's ongoing criminal conduct statute, which was enacted by our legislature in 1996. *See* 1996 Iowa Acts ch. 1133, §§ 26–30 (codified at Iowa Code ch. 706A (1997)). It was patterned after the Model Ongoing Criminal Conduct Act, which was part of the Report of the President's Commission on Model State Drug Laws in 1993.[1] Consequently, it is appropriate to look to the model act to help construe our Iowa statute. *See State v. Hogrefe*, 557 N.W.2d 871, 877 (Iowa 1996) (Model Penal Code properly considered in interpreting state criminal statute patterned after model code).

The model act was a product of a series of findings relating to the vast adverse economic impact on legitimate commerce and society as a whole of ongoing criminal activity or crimes conducted as a part of a continuing business. *See* Model Ongoing Criminal Conduct Act § 2 (1993) [hereinafter Model Act]. The basic goal of the model act was to defend legitimate commerce from organized criminal activity and remedy the economic effects of crime. *See* Model Act § 3. While primarily concerned with civil penalties, forfeitures, and civil damages, the model act also criminalizes certain conduct. *See* 4 Robert R. Rigg & B. John Burns, *Iowa Practice, Criminal Law and Procedure* § 120, at 43 (Supp. 2000). It is the criminal violations that lie at the heart of the dispute in this case.

The model act establishes five categories of violations. These five categories are: (1) specified unlawful activity influenced enterprises; (2) facilitation of a criminal network; (3) money laundering; (4) acts of specified unlawful activity; and (5) negli-

---

1. Iowa is the only state in the nation to enact an ongoing criminal conduct statute. Although some states have enacted money laundering and racketeering acts with definitions similar to those found in the model act, no other state has enacted the comprehensive substantive provisions of the model act as a separate ongoing criminal conduct statute.

gent empowerment of specified unlawful activity. *See* Model Act § 5. The model act then creates civil remedies and actions based on the violations, and provides for civil penalties, forfeitures, and civil damages. *See id.* § 6. Additionally, the model act imposes criminal sanctions for three of the five categories of violations, including acts of specified unlawful activity. *See id.* § 7. The act also includes comprehensive definitions for five important terms or phrases used in the act, including "specified unlawful activity." *See id.* § 4.

Our Iowa statute was enacted without the benefit of any stated legislative findings or purpose.[2] However, it establishes the same five categories of violations as the model act. *See* Iowa Code § 706A.2. It also creates civil remedies similar to the model act, *see id.* § 706A.3, and imposes criminal sanctions for the same three categories of violations as the model act.[3] *See id.* § 706A.4. Under section 706A.4, a "person" whose conduct falls within one of these three categories commits a class "B" felony.[4] Finally, the Iowa statute defines the same five terms and phrases used in the statute as the model act. *See id.* § 706A.1.

Although similar in scope and design, there is one critical distinction between the model act and Iowa's ongoing criminal conduct statute. While four of the five statutory definitions in chapter 706A are substantially similar, if not identical, to the definitions in the model act, the phrase "specified unlawful activity" is more broadly defined in chapter 706A than in the

model act. This distinction significantly impacts the issue presented in this case.

The drafters of the model act defined a "[s]pecified unlawful activity" as "any act, including any preparatory or completed offense, committed for financial gain" punishable under state law by incarceration for more than one year, but limited to the following:

(1) trafficking in controlled substances, homicide, robbery, extortion, extortionate extensions of credit, trafficking in explosives or weapons, trafficking in stolen property, or obstruction of justice.

(2) reference to grades of offenses or to other appropriate specified state offenses.

(3) reference to predicate offenses to the racketeering offenses and to the racketeering offenses, such as illegal investment in an enterprise, illegal control of an enterprise, illegal conduct of an enterprise.

*See* Model Act § 4(e).

The comment to the model act refers to "specified unlawful activity" as the predicate offenses to racketeering and suggests that states adopting the act should select those "state offenses that represent the key components of ongoing criminal networks." *See id.* § 4 cmt.

By contrast, our Iowa legislature defined "specified unlawful activity" as:

[A]ny act, including any preparatory or completed offense, committed for financial gain on a continuing basis, that is

---

2. We recognize that the preamble to this act indicates Iowa's ongoing criminal conduct statute was enacted for the purpose of "establishing economic and other penalties for certain criminal activity." 1996 Iowa Acts ch. 1133 (codified at Iowa Code ch. 706A (1997)). The statute was enacted along with several other acts promoting the same purpose, including the Iowa Forfeiture Reform Act (Chapter 809A), the Iowa Money Laundering Act (Chapter 706B), and the Iowa Financial Transaction Reporting Act (Chapter 529). *Id.* at ch. 1133, §§ 1–37.

3. Iowa Code section 706A.4 provides: "A person who violates section 706A.2, subsection 1, 2, or 4, commits a class 'B' felony." Section 706A.2(1) makes "specified unlawful activity influenced enterprises" a violation. Section 706A.2(2) makes "facilitation of a criminal network" a violation. Section 706A.2(4) makes "acts of specified criminal activity" a violation.

4. Iowa Code section 706A.2(4) provides: "It is unlawful for a person to commit specified unlawful activity as defined in section 706A.1."

punishable as an indictable offense under the laws of the state in which it occurred and under the laws of this state.

Iowa Code § 706A.1(5). Unlike the model code, the definition does not include any further limitation to racketeering offenses or offenses that represent the key components of ongoing criminal networks. Instead, the phrase "specified unlawful activity" applies to any indictable offense, limited only to those offenses "committed for financial gain on a continuing basis." *Id.* The "on a continuing basis" language is also found in the definition of "criminal network," but the definition of "specified unlawful activity" does not contain the further requirement of a criminal network that a "combination of persons" be engaged in the prohibited conduct. *See id.* § 706A.1(1).

Although we use a model act for guidance in interpreting our statutes which are patterned after such an act, when our legislature has varied our statute from portions of a model act, the statute cannot be interpreted consistently with the model act in its entirety. *See Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 260 (Iowa 1995). The definition of "specified unlawful activity" adopted by our legislature is clearly broader than the model act definition, and extends beyond the concept of a criminal network or enterprise. *See State v. Reed*, 618 N.W.2d 327, 333–34 (Iowa 2000).

Notwithstanding, Olsen argues our legislature could not have intended for the ongoing criminal conduct statute to apply to criminal acts that are not part of a criminal network or enterprise because the overall purpose of the model act was to target conduct in the nature of racketeering. Thus, Olsen asks us to interpret the word "person" in section 706A.2(4) in light of the alleged overall purpose of this statute to combat criminal networks or enterprises, so that it applies only to persons who are part of a criminal network or enterprise.

Our task in construing statutes is "to look at what the legislature said," not at "what it should or might have said." *Branson v. Municipal Fire & Police Retirement Sys.*, 591 N.W.2d 193, 197 (Iowa 1999). Moreover, it is the prerogative of the legislature to define its statutory language. *Hawkeye Bancorporation v. Iowa College Aid Comm'n*, 360 N.W.2d 798, 802 (Iowa 1985); *see Henriksen*, 540 N.W.2d at 259 (noting that when the legislature has defined a statutory term, "[t]he court cannot ... apply a definition it finds more to its liking"). When this is done, the definition used by the legislature is binding on us. *Cedar Mem'l Park Cemetery Ass'n v. Personnel Assocs., Inc.*, 178 N.W.2d 343, 346 (Iowa 1970). We will not undermine a policy decision by our legislature "by ignoring the plain language of the statute." *State v. Palmer*, 554 N.W.2d 859, 865 (Iowa 1996).

We have no doubt that the paramount purpose of Iowa's ongoing criminal conduct statute is, like the model act, to combat criminal networks and enterprises. This is evident from the overall framework of the statute. Additionally, two of the three categories of criminal violations under the statute apply to criminal networks and enterprises. *See* Iowa Code §§ 706A.2(1) (specified unlawful activity influenced enterprises), 706A.2(2) (facilitation of a criminal network). However, the plain language of the third category of criminal violations under section 706A.2(4), "acts of specified unlawful activity," clearly expresses the legislative intent to include all types of indictable offenses when committed "for financial gain on a continuing basis," without regard to the other aspects of the operation of a criminal network or enterprise. Our legislature could have limited "specified unlawful activity" to specific offenses indicative of criminal networks, but clearly did not do so.[5] There is

5. A legislative explanation attached to the bill states that Iowa Code § 706A.2(4) provides

no support from the language of the statute that the "specified unlawful activity" violation applies only to a person engaged in a criminal network or enterprise.

Olsen further attempts to limit the "specified unlawful activity" violation to criminal networks by arguing that the "for financial gain" requirement of section 706A.2(4) does not apply to financial gain that is merely personal to the offender, but applies only to financial gain which facilitates a criminal network. If not, Olsen argues, nearly all indictable serial thefts would constitute "specified unlawful activity." Olsen does not believe the legislature could have intended to make multiple acts of theft into the crime of ongoing criminal conduct because section 714.3 already permits multiple acts of theft from the same person to be considered a single offense, using the total value of all of the stolen property to enhance the degree of the crime. *See id.* § 714.3.

Our legislature imposed a "financial gain" element in defining both "criminal networks" and "specified unlawful activity." *See id.* § 706A.1(1), (5). However, this common element does not change the character of the separate violations. The "specified unlawful activity" violation under section 706A.2(4) is not limited to conduct involving a combination of persons as is the facilitation of a "criminal network" violation under section 706A.2(2), but applies without regard to the existence of a criminal network. Likewise, the financial gain requirement under the "specified unlawful activity" violation is unrelated to the activities that make up a criminal network. Furthermore, it is of no consequence that Olsen's acts could constitute both "ongoing criminal conduct" and a single theft. *See State v. Peters*, 525 N.W.2d 854, 859 (Iowa

1994) (when defendant's criminal act(s) implicates more than one statute, prosecutor decides which charge to file).

We are obligated to ascertain the intent behind criminal statutes by examining what the legislature said, without speculation as to the probable intent beyond the words used in the statute. *State v. Adams*, 554 N.W.2d 686, 689 (Iowa 1996). In doing so in this case, we realize the ongoing criminal conduct statute includes crimes committed "for financial gain on a continuing basis" that are unrelated to the general notion of racketeering activity. This is derived from the clear language of the statute and it is not for us to search for a meaning more compatible with portions of the model act which the legislature did not adopt. *See State v. Wagner*, 596 N.W.2d 83, 87 (Iowa 1999) ("principles of statutory construction prevent us from reading into the statute something the legislature has not included"). We also realize harsh criminal penalties are associated with violations of the statute, which can be much more severe than the penalties associated with the underlying predicate offense.[6] Yet, "[o]nce the legislature has spoken, [our] role is to give effect to the law as written," not to rewrite it to reflect a policy different from that language. *Id.* at 88. Nevertheless, we do not consider it unreasonable for our legislature to punish nonracketeering crimes to the same degree as racketeering crimes when those activities, although not part of organized crime, are committed on a continuing basis for financial gain.

## IV. Conclusion.

We conclude section 706A.2(4) does not require the indictable offense to

---

for the liability of those committing "specified unlawful activity under circumstances in which the acts are for financial gain." S.F. 482, 76th G.A. (1996). However, the explanation further states that those conducting an enterprise by engaging in specified unlawful activity will be guilty of violating Iowa Code section 706A.2(1). *Id.*

6. For example, theft in the first degree is a class "C" felony, Iowa Code § 714.2(1), with a maximum term of incarceration of not more than ten years. *Id.* § 902.9(3). By contrast, a violation of ongoing criminal conduct is a class "B" felony, *id.* § 706A.4, with a maximum term of incarceration of not more than twenty-five years. *Id.* § 902.9(1).

be committed as part of a criminal network or enterprise. Consequently, we reject the claim by Olsen that there was insufficient evidence of a criminal network to support the conviction. This evidence was not required to support the conviction.

**AFFIRMED.**

All justices concur except SNELL, J., who takes no part.