MANSFIELD, Justice.
*215 This complex dispute involving an agricultural cooperative, a large customer of the cooperative, and a dishonest salesman resulted in a three-week jury trial and a substantial damages verdict in favor of the customer and against the cooperative. We elect to limit our consideration of the case to the three matters raised in the cooperative's application for further review.
As to one of those matters, we conclude the district court properly denied the cooperative's motion for new trial based on inconsistent verdicts. We also conclude the district court did not abuse its discretion in denying the cooperative's pretrial motion to have equitable issues tried first.
The third question is more thorny-relating to the constitutionality of Iowa Code section 706A.2(5) (2011). The district court found the section unconstitutional and, therefore, dismissed the customer's claim under that section before trial.
We too determine that Iowa Code section 706A.2(5) unconstitutionally shifts the burden to the defendant. Specifically, any person who provides property or services that end up being used to facilitate "specified unlawful activity" must prove his or her own lack of negligence to avoid liability. However, we find the burden-shifting provision contained in section 706A.2(5)(b )(4) can be severed from the rest of the statute. Accordingly, while we otherwise affirm the district court, we reverse the district court's dismissal of this claim. We thus remand for further proceedings, without foreclosing the possibility of other defenses to the customer's section 706A.2(5) claim.
I. Background Facts and Proceedings.
West Central Cooperative is an agricultural cooperative owned by farmers. Westco Agronomy Co., L.L.C. is a wholly-owned subsidiary of West Central formed in 2005 for the purpose of streamlining delivery of agronomy products, including seed, fertilizer, and chemicals.[1] In 2002, Westco hired Chad Hartzler to work in the agronomy division selling seed and eventually chemicals. He was later promoted to sales director but retained oversight of *216 some of Westco's largest accounts, including the Wollesens.
The Wollesens farm in Lake View. Bill and Kristi Wollesen, along with their son, John, are partners in Iowa Plains Farms.[2] During the relevant time period of this case, the Wollesens farmed more than 6000 acres. The Wollesens became Westco members in 2001, and Hartzler became their sales representative in 2005.
The parties' accounts differ as to how and when Hartzler first met the Wollesens. According to Jay Sturtz, the Westco sales representative before Hartzler, Hartzler met the Wollesens in the summer of 2003 when Sturtz took Hartzler to the Wollesens' farm. Hartzler confirmed this timing. However, Bill Wollesen claimed he did not meet Hartzler until December 2005 at one of Westco's office locations.
Hartzler testified he entered into a bribery scheme with Bill Wollesen in the summer of 2005. According to his testimony,
[Bill Wollesen] said, "How about if I just give you a little cash to give you a little bit of cash and these beans are a little cheaper." ...
So that day, sitting at his table, he walked into his office and brought out $2,000 cash as a discount. That was the only time he ever paid me in cash. But he gave me $2,000.
....
He wrote a check to West Central for the amount he paid them. He gave me $2,000 cash.
Bill Wollesen denied this version of events. He maintained that he never bribed Hartzler.
For the next several years until 2011, the Wollesens purchased seed, fertilizer, and chemicals from Westco at what they understood to be very reduced prices. For instance, the Wollesens paid approximately thirty percent less on average for seed corn than customers with like volume. The Wollesens asserted that their direct payments to Hartzler were on Hartzler's instruction as "commission" for his sales and that the reduced prices were not suspect because Hartzler touted himself as "the deal maker." After purchasing products from Westco at reduced prices, the Wollesens-through their company ByRite Farm Supply-resold many of the products for a profit.
To conceal from Westco his low-price sales to the Wollesens, Hartzler input higher prices into the sales system than he actually charged the Wollesens. As a result, Westco consistently billed the Wollesens more than the Wollesens actually paid. The effect was a growing deficit in the Wollesens' account on Westco's books. Although Westco maintained that it sent regular bills to the Wollesens based upon the higher prices reflected on its own books, the Wollesens generally denied having received the statements and later suggested Hartzler had intercepted them. The Wollesens also insisted they had been prepaying for product, based on representations made to them by Hartzler.
In early 2011, the Wollesens made payments totaling $2.1 million. They understood this to be entirely a prepayment for products for the 2011 crop year, whereas Hartzler applied it to the deficit on the Westco books. This resulted in the Wollesens' account with Westco having a positive balance.
On April 30, 2011, Hartzler suddenly resigned via a brief email to Westco's chief operating officer. The email said, "[D]on't *217 deliver any more product to Iowa [P]lains...." In his attached resignation letter, Hartzler vaguely admitted wrongdoing and stated that he had "lied about several things over the past 5 or 6 years to cover up poor management of [his] divisions" and to hide a gambling addiction.
Following receipt of this letter, Westco management arranged a phone call with Hartzler. On the call, Hartzler revealed that he had accepted direct payments from the Wollesens in exchange for lower prices on Westco products.
In 2013, Hartzler was charged with wire fraud in the United States District Court for the Northern District of Iowa. See 18 U.S.C. § 1343 (2000). The federal information alleged that Hartzler had engaged in a scheme with Bill Wollesen to defraud Westco. Hartzler pled guilty and was sentenced to fifty-one months in prison. None of the Wollesens, however, were charged.
Meanwhile, Westco and the Wollesens blamed each other for Hartzler's scheme. Westco argued that the Wollesens bribed Hartzler repeatedly over a period of years to obtain prices below Westco's own costs. The Wollesens argued that Westco should have been aware of Hartzler's scheme, that they themselves were not aware of it, and that they had previously made clear to Westco they did not want to purchase any products on credit.
On May 12, 2011, Westco brought suit against the Wollesens and Hartzler in the Iowa District Court for Story County, alleging commercial bribery, theft, conversion, breach of fiduciary duty, breach of loyalty, unjust enrichment, foreclosure of an agricultural lien, and violations of Iowa Code chapter 706A. Westco's petition sought damages under each count, except the foreclosure count. On the ongoing unlawful conduct count (chapter 706A), Westco requested both damages and injunctive relief. Westco's petition included a jury demand. On May 25, Westco amended its petition to add a breach of contract claim, for which it again sought damages.
On November 14, the Wollesens answered, denying liability. They also filed counterclaims against Westco for breach of contract, fraud, negligent retention, breach of fiduciary duty, and violations of Iowa Code section 706A.2(1)(a ) and section 706A.2(5).
On May 6, 2013, both sides filed motions for summary judgment. Thereafter, the district court dismissed all but three of Westco's claims: breach of contract, breach of fiduciary duty, and violation of chapter 706A-specifically section 706A.2(1)(a ). The district court also dismissed all but three of the Wollesens' counterclaims: breach of contract, fraudulent misrepresentation, and violation of Iowa Code section 706A.2(1)(a ). In its summary judgment ruling, the district court found the provisions of section 706A.2(5) unconstitutional in light of Hensler v. City of Davenport , 790 N.W.2d 569, 588-89 (Iowa 2010). The court also determined that severance of the unconstitutional burden-shifting provision in section 706A.2(5) from the remainder of the statute was not possible, thus invalidating the entire claim under this subsection.
On June 17, 2014, Westco moved for equitable issues to be tried in equity before any jury trial. Westco maintained that the Wollesens were relying on alleged contracts resulting from commercial bribery, that those contracts were subject to the equitable defenses of rescission and restitution, and that those equitable matters should be heard first. Simultaneously, although the deadline for amendment of pleadings had passed weeks before, Westco moved to amend its petition to seek rescission and restitution as specific remedies for its existing claims. The district *218 court denied both motions in a July 1 order. Westco subsequently voluntarily dismissed its breach of contract claim, leaving only two of its claims-breach of fiduciary duty and section 706A.2(1)(a ) -for trial.
The case proceeded to trial on July 8. Trial lasted fifteen trial days. The following instruction was given to the jury as No. 29:
If you find that Bill Wollesen, Kristi[ ] Wollesen, John Wollesen, the Trust, and/or Iowa Plains Farms proved the following propositions, no judgment may be entered against such parties, and Westco cannot recover against such parties on account of its claims against such parties for ongoing criminal conduct
1. West Central possessed the same or greater knowledge as to the illegality or wrongfulness of the activity giving rise to such unlawful conduct, or
2. West Central was equally or more culpable than the respective party against whom the ongoing criminal conduct is asserted.
Westco was allowed to make a written record on the jury instructions. It objected to this instruction as being "one-sided." Westco's written comments continued, "In pari delecto is a defense available to any party against whom a claim is asserted under [chapter] 706A." The district court overruled this objection.
The jury was also given a verdict form and special interrogatories. In its special verdicts, the jury indicated that Westco had proved both its breach of fiduciary duty claim and its ongoing unlawful conduct claim under Iowa Code section 706A.2(1)(a ) against Hartzler. The jury thus found for Westco on its claims against Hartzler and awarded damages against Hartzler equal to the "commissions" he had received from the Wollesens: $485,315.
However, the jury also indicated that none of the Wollesens had conspired with Hartzler to breach the duties Hartzler owed to Westco, and that none of the Wollesens had engaged in ongoing unlawful conduct. The jury thus declined to award any damages to Westco against the Wollesens.
On the Wollesens' counterclaims, the jury found that Westco committed both breach of contract and fraudulent misrepresentation. Hence, the jury awarded the Wollesens $576,189 in damages against Westco. This amount represented the cost of replacement product after Westco refused to deliver any 2011 product to the Wollesens, despite their earlier $2.1 million payment. The jury rejected the Wollesens' counterclaim that had been based on Iowa Code section 706A.2(1)(a ).
Following the denial of posttrial motions, both Westco and the Wollesens appealed, raising numerous grounds. We transferred the case to the court of appeals. The court of appeals affirmed as to Westco's appeal, but granted the Wollesens' cross-appeal as to one point. It held the district court erred in granting summary judgment dismissing the Wollesens' claim under Iowa Code section 706A.2(5). The court of appeals explained that Hensler was distinguishable and section 706A.2(5) was constitutional because it did not contain a presumption of negligence. Thus, it reversed and remanded for further proceedings on this counterclaim only.
We granted Westco's application for further review.
II. Standard of Review.
We review a district court's ruling on a motion for summary judgment for correction of errors at law. In re Estate of Workman , 903 N.W.2d 170, 175 (Iowa 2017). Summary judgment is proper when *219 the moving party has shown there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Homan v. Branstad , 887 N.W.2d 153, 163 (Iowa 2016).
Our standard of review of a district court's ruling on a motion for a new trial depends on the basis of the motion. Winger v. CM Holdings, L.L.C. , 881 N.W.2d 433, 445 (Iowa 2016). A motion for a new trial based on the question of inconsistent verdicts is a question of law, so our review is for correction of errors at law. See Clinton Physical Therapy Servs. v. John Deere Health Care, Inc. , 714 N.W.2d 603, 609 (Iowa 2006).
Whether a party's claims should have been tried in equity is a legal issue, and our review is for correction of errors at law. See Iowa R. Civ. P. 1.903(1) ; Clinton Physical Therapy Servs. , 714 N.W.2d at 609. However, the sequence of trial is a matter that "lies within the trial court's discretion." Morningstar v. Myers , 255 N.W.2d 159, 161 (Iowa 1977).
III. Analysis.
"On further review, we can review any or all of the issues raised on appeal or limit our review to just those issues brought to our attention by the application for further review." Papillon v. Jones , 892 N.W.2d 763, 769 (Iowa 2017) (quoting Woods v. Young , 732 N.W.2d 39, 40 (Iowa 2007) ).
The parties raised numerous issues on appeal and cross-appeal, several of them relating to the sufficiency of evidence or the adequacy of damages. However, only Westco sought further review in this court. Westco's application for further review raised three points: (1) the court of appeals' reversal of the district court's dismissal of the Wollesens' negligent empowerment counterclaim under Iowa Code section 706A.2(5), (2) the court of appeals' affirmance of the district court's denial of Westco's motion for a new trial on its ongoing unlawful conduct claim based on inconsistent verdicts, and (3) the court of appeals' affirmance of the district court's denial of Westco's motion for equitable issues to be tried first in equity.
We elect to confine our review to those issues. The court of appeals decision shall stand as the final decision on the remaining issues raised on appeal. See JBS Swift & Co. v. Ochoa , 888 N.W.2d 887, 892 (Iowa 2016).
A. Constitutionality of Iowa Code Section 706A.2(5). As noted, Westco contends the court of appeals should not have reinstated the Wollesens' negligent empowerment claim. We begin with a review of the relevant statutory language.
The Ongoing Criminal Conduct Act provides in part,
5. Negligent empowerment of specified unlawful activity.
a. It is unlawful for a person to negligently allow property owned or controlled by the person or services provided by the person, other than legal services, to be used to facilitate specified unlawful activity, whether by entrustment, loan, rent, lease, bailment, or otherwise.
b. ....
....
(4) The plaintiff shall carry the burden of proof by a preponderance of the evidence that the specified unlawful activity occurred and was facilitated by the property or services. The defendant shall have the burden of proof by a preponderance of the evidence as to circumstances constituting lack of negligence *220 and on the limitations on damages in this subsection.
Iowa Code § 706A.2(5).[3]
Although criminal sanctions are not available for violations of Iowa Code section 706A.2(5), see id. § 706A.4, a host of civil remedies are available. To begin,
7. Any person whose business or property is directly or indirectly injured by conduct constituting a violation of this chapter, by any person, may bring a civil action, subject to the in pari delicto defense, and shall recover threefold the actual damages sustained and the costs and expenses of the investigation and prosecution of the action including reasonable attorney fees in the trial and appellate courts. Damages shall not include pain and suffering.
Id. § 706A.3(7). In addition, the district court shall grant the plaintiff, "after making due provision for the rights of innocent persons," any "appropriate order or judgment," including,
a. Ordering any defendant to divest the defendant of any interest in any enterprise, or in any real property.
b. Imposing reasonable restrictions upon the future activities or investments of any defendant, including, but not limited to, prohibiting any defendant from engaging in the same type of endeavor as any enterprise in which the defendant was engaged in a violation of this chapter.
c. Ordering the dissolution or reorganization of any enterprise.
d. Ordering the payment of all reasonable costs and expenses of the investigation and prosecution of any violation, civil or criminal, including reasonable attorney fees in the trial and appellate courts.
Id. § 706A.3(3).
In other words, if a plaintiff proves that the defendant's property or services merely "facilitated" certain unlawful activity to the plaintiff's detriment, the plaintiff may recover treble damages from the defendant, along with other potential remedies such as attorneys' fees and costs. To avoid liability, the defendant must prove its own due care.
The district court entered summary judgment in Westco's favor on the Wollesens' counterclaim under Iowa Code section 706A.2(5). Reasoning from Hensler , 790 N.W.2d at 588-89, the district court agreed with Westco that this law used an unconstitutional presumption and was thus unenforceable. The court of appeals reversed the district court, disputing that the statute established a presumption of negligence.
In Hensler , a mother challenged the constitutionality of a "parent responsibility" municipal ordinance that imposed a fine not to exceed $750 the third time a parent failed to exercise "reasonable control" over a child's unlawful conduct. Id. at 574-76. The ordinance contained a rebuttable *221 presumption, upon the second occurrence of a child's unlawful act, that "the parent failed to exercise reasonable parental control." Id . at 576 (quoting Davenport, Iowa, Code § 9.56.040 (2006)).
After rejecting other constitutional objections to the law, we turned to the mother's argument that the law established an arbitrary-and therefore unconstitutional-presumption. Id . at 586. We stated, "A presumption in a civil case violates the Due Process Clause of the United States Constitution if it is arbitrary or operates to deny a fair opportunity to rebut it." Id. We discussed a prior case in which we had declared unconstitutional a rebuttable statutory presumption that the operator of a transmission line had been negligent whenever the transmission line caused injury to any person or property. See id . at 586-87 (discussing Calkins v. Adams Cty. Coop. Elec. Co ., 259 Iowa 245, 144 N.W.2d 124 (1966) ). We then said,
Our holding in Calkins is consistent with the well-settled law that in an ordinary negligence action the mere fact an incident occurred does not mean a party is negligent. Generally, we do not allow a fact finder to infer negligence from an injury because injuries can happen without any negligence. Thus, it is irrational to allow a fact finder to use the mere occurrence of an incident to presume a person was negligent and the cause of the incident.
We believe the presumption contained in Davenport's ordinance is just as arbitrary and irrational as the presumption in an ordinary negligence case. There can be many causes for a child to commit an "occurrence" under the ordinance.
Id . at 587-88 (citations omitted).
We concluded,
Therefore, allowing a fact finder to presume negligence and causation based on the happening of an "occurrence," rather than finding negligence and causation based on the facts, is arbitrary and irrational in light of the multiple factors that can cause the "occurrence," as defined by the statute. Long ago, we realized that things happen absent a person's negligence. For this reason, we do not permit a fact finder to presume a person's negligence merely because some incident occurred. Accordingly, we hold the provisions of the ordinance creating the presumption are arbitrary and irrational and violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.
Id . at 588-89.[4]
Hensler was followed by City of Sioux City v. Jacobsma , where we rejected an argument that a Sioux City automated traffic enforcement (ATE) ordinance created "an irrational and unfair presumption" in violation of both the Federal and Iowa Due Process Clauses. See Jacobsma , 862 N.W.2d 335, 339-48 (Iowa 2015). The ordinance established a presumption that the owner of a vehicle caught speeding on camera was the person responsible for the violation and the corresponding civil penalty. Id. at 337-38. In that case, the owner was fined without evidence that he was-or was not-driving at the time in question. Id . at 346.
In upholding the Sioux ATE ordinance, we distinguished Hensler :
*222 We do not think our due process holding in Hensler is controlling. In Hensler, the alleged connection between a parent's supervision and the subsequent commission of juvenile acts was simply too attenuated to meet a rational basis test. The inferences under the ordinance in Hensler -that a parent was negligent and that such negligence caused the juvenile behavior-involved a double-barreled blast of complex factual issues that, when combined, dramatically reduced the relationship between the established fact of a parent-child relationship and the presumed result of delinquency. The presumption was simply unfair to parents and had little justification.
Id. at 346-47 (citations omitted). By contrast, we found Sioux City's presumption to be "reasonable." Id . at 347.
In our view, the presumption here is more akin to the presumption invalidated in Hensler . Under Iowa Code section 706A.2(5), once a plaintiff proves that "specified unlawful activity occurred" and that the defendant's property or services-say, property leased or entrusted by the defendant to the plaintiff-"facilitated" that activity, the defendant is presumed negligent and liable and must affirmatively establish due care as a defense.
Thus, as in Hensler , the presumption here renders one party financially responsible for another's illegal conduct, unless that party proves he, she, or it exercised due care. The only connection the plaintiff must prove is that some property or services owned or controlled by the defendant "facilitated" the activity.
It is one thing to require a party to prove a single concrete fact- i.e., that he or she was not driving his or her car at a particular time and place. It is quite another to place the burden on a party to prove a multifaceted, mixed question of fact and law-i.e., that the party was not negligent in allowing ongoing unlawful activity to occur.
Moreover, the consequences for a violation of Iowa Code section 706A.2(5) are severe. Treble damages, divestiture, injunctive relief, dissolution, and attorneys' fees and costs are all available. See Iowa Code § 706A.3(3)(a )-(d ), (7).
The Wollesens urge that Hensler is distinguishable because Westco was Hartzler's employer and the employer-employee relationship differs from the parent-child relationship. This is true, but section 706A.2(5) is not limited to employers. Any "person" can be liable. See id. § 706A.2(5)(a ). In fact, the section could be applied to a parent who allowed a child to use a residence owned or leased by the parent in which unlawful activity occurred.
The Wollesens also analogize section 706A.2(5) to workers' compensation or dram-shop liability. We find the analogies inapt. Workers' compensation systems exist in all states and "impose a series of tradeoffs." Baker v. Bridgestone/Firestone , 872 N.W.2d 672, 676 (Iowa 2015).
In the grand bargain removing workers' compensation matters from the civil justice system, employers receive immunity from potentially large tort lawsuits and jury verdicts on the condition that they pay compensation benefits for injuries arising out of and in the course of employment without regard to fault.
Id . at 676-77. Dram-shop laws exist in the vast majority of states. See Richard Smith, A Comparative Analysis of Dramshop Liability and a Proposal for Uniform Legislation , 25 J. Corp. L. 553, 554 (2000) (stating that forty-four states and the District of Columbia have enacted dram-shop laws). In Iowa, the plaintiff must prove that he or she was injured by an intoxicated person and that the intoxicated person *223 was sold and served alcohol by a licensee who knew or should have known the person was or would become intoxicated. See Iowa Code § 123.92(1)(a ). It is true the statute establishes a presumption by making it an affirmative defense "that the intoxication did not contribute to the injurious action of the person." Id . § 123.92(1)(b ). Yet a presumption that intoxication did contribute to an injury committed by a drunk person seems rational and defensible, not arbitrary. As we have said, "The legislative plan calls for a carefully limited class of persons to whom recovery rights were given." Fuhrman v. Total Petroleum, Inc ., 398 N.W.2d 807, 810 (Iowa 1987). In a sense, dram-shop laws are another type of tradeoff, where in return for rights to sell and serve alcohol, licensees accept a legal system with relaxed standards for liability.
Section 706A.2(5) is unique. No other state has such a law. See State v. Olsen , 618 N.W.2d 346, 348 n.1 (Iowa 2000). The section is not part of a grand bargain; it is not limited to a particular regulated industry; and its presumption is not rebuttable by narrow, concrete proof relating to a specific time and place.
Furthermore, as we pointed out in Olsen , chapter 706A covers far more offenses than the Model Ongoing Criminal Act that served as its template. See id . at 349-50. The legislation extends to any indictable offense, not just the types of offenses normally associated with organized crime. Id . ; see also Anna T. Stoeffler, Note, Iowa's State RICO Statute:Wreaking Havoc on Iowa's Criminal Justice System , 102 Iowa L. Rev. 825, 831-32 (2017). This means the coverage of section 706A.2(5) is quite broad.
The comments to the model act gave the following justification for this burden-shifting provision:
The burden of proof with respect to lack of negligence ... is placed on the defendant in conformance with the normal rule that "the burden of proving a fact is put on the party who presumably has peculiar means of knowledge enabling him to prove the fact."
Model Ongoing Criminal Conduct Act § 5(e ) cmt. (1993) (quoting 9 J. Wigmore, Evidence § 2486, at 275 (3d ed. 1940)). Despite this observation, we normally require that negligence be proved rather than presumed. See Brewster v. United States , 542 N.W.2d 524, 528 (Iowa 1996) ("Negligence must be proved...."). Often it is difficult to prove a negative. See, e.g. , State v. McCoy , 742 N.W.2d 593, 598 (Iowa 2007) (noting that the burden to recover under the wrongful imprisonment statute is "difficult to meet because it requires the person to prove a negative," i.e., innocence). Again, the model act contemplated that this provision would apply to a limited number of underlying crimes, not any indictable offense.
For the foregoing reasons, we find the presumption in Iowa Code section 706A.2(5) violates the Due Process Clause of the United States and Iowa Constitutions. We now turn to whether section 706A.2(5)(b )(4) is severable from the rest of section 706A.2(5).
As we noted in Hensler , "[o]ur constitutional duty requires us to preserve as much of the ordinance as possible within constitutional constraints." 790 N.W.2d at 589. "We have adhered to this rule of constitutional restraint for over 100 years." Breeden v. Iowa Dep't ofCorr. , 887 N.W.2d 602, 608 (Iowa 2016). Iowa Code section 4.12 codifies this precept. See Iowa Code § 4.12 ("If any provision of an Act or statute or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the Act or statute which *224 can be given effect without the invalid provision or application, and to this end the provisions of the Act or statute are severable."). Severance is appropriate "if it does not substantially impair legislative purpose, the enactment remains capable of fulfilling the apparent legislative intent, and the remaining portion of the enactment can be given effect without the invalid provision." Breeden , 887 N.W.2d at 608 (quoting Clark v. Miller , 503 N.W.2d 422, 425 (Iowa 1993) ).
Westco argues, and the district court found, that section 706A.2(5)(b )(4) cannot be severed from the remainder of section 706A.2(5) because it would leave the negligent empowerment cause of action without a standard of proof or a complete list of elements.
We are not persuaded. Section 706A.2(5)(a ) states that "[i]t is unlawful for a person to negligently allow property owned or controlled by the person or services provided by the person, other than legal services, to be used to facilitate specified unlawful activity." Iowa Code § 706A.2(5)(a ) (emphasis added). Hence, the section contains a legal standard-i.e., negligence. Removing the unconstitutional presumption simply means the plaintiff must prove the defendant's negligence rather than the defendant having the burden to prove its own lack of negligence.
The statute therefore operates without the presumption; the core of the statute-the cause of action for negligent empowerment-remains intact without the offending provision. "When parts of a statute or ordinance are constitutionally valid, but other discrete and identifiable parts are infirm, we may sever the offending portions from the enactment and leave the remainder intact." Am. Dog Owners Ass'n v. City of Des Moines , 469 N.W.2d 416, 418 (Iowa 1991) (per curiam). Accordingly, we hold the district court did not err in striking the presumption from Iowa Code section 706A.2(5), but erred in granting summary judgment on the basis that the statute could not be rescued through severability. Although we do not adopt the court of appeals' reasoning, we agree that further proceedings are needed on the Wollesens' counterclaim based on section 706A.2(5).[5]
B. Inconsistent Verdicts. Westco contends the jury's verdict finding that Hartzler engaged in ongoing unlawful conduct is inconsistent with its verdicts finding that the Wollesens did not. According to Westco, if Hartzler engaged in commercial bribery, the Wollesens must have bribed him. Conversely, if the Wollesens did not engage in commercial bribery, Hartzler could not have either.
"When we can harmonize the jury verdict in a reasonable manner consistent with the jury instructions, the evidence, and inferences the jury could have drawn from that evidence, the verdict is not inconsistent." Crow v. Simpson , 871 N.W.2d 98, 107 (Iowa 2015).
[T]he determination of whether two answers are inconsistent requires the court to consider how the jury could have viewed the evidence and how that view of the evidence fits into the requirements *225 of the instructions or the law applicable to the case.
Clinton Physical Therapy Servs. , 714 N.W.2d at 613.
The Wollesens argue that Instruction No. 29 enables the verdicts to be reconciled. We agree. Instruction No. 29 stated that Westco could not recover against the Wollesens for ongoing unlawful conduct if Westco "was equally or more culpable than the respective party against whom the ongoing criminal claim is asserted." A jury could have determined that the Wollesens bribed Hartzler to give them discounted products yet also determined that Westco was "equally or more culpable" than the Wollesens. On this basis, the jury would have declined to find for Westco on its ongoing unlawful conduct claim against the Wollesens.
Westco responds that it objected to Instruction No. 29 at trial. Cf. In re Estate of Workman , 903 N.W.2d at 175 ("When instructions are not objected to, they become 'the law of the case.' " (quoting Hoskinson v. City of Iowa City , 621 N.W.2d 425, 430 (Iowa 2001) )); Ludman v. Davenport Assumption High Sch. , 895 N.W.2d 902, 916 (Iowa 2017) ("Because neither party objected to this instruction, it becomes the law of the case."). However, Westco has not appealed the giving of Instruction No. 29. See Smith v. Iowa State Univ. of Sci. & Tech. , 851 N.W.2d 1, 34 (Iowa 2014) ("Jury Instruction No. 11, which the State has not challenged on appeal, is the law of the case."); Pavone v. Kirke , 801 N.W.2d 477, 489 (Iowa 2011) ("Kirke and Wild Rose failed to raise on appeal any error in the instructions given to the jury on the breach of contract claims. Therefore, right or wrong, the instructions become the law of the case."). In any event, Westco objected only that the instruction was "one-sided" and should apply to each party's claim of ongoing unlawful conduct against the other.[6] Westco never claimed the instruction should not apply to its own ongoing unlawful conduct claim.
Additionally, Westco asserts the Wollesens have waived any reliance on Instruction No. 29 to reconcile the verdicts because they did not argue that instruction as a way to reconcile the verdicts below. (Westco does not dispute the Wollesens have relied extensively on Instruction No. 29 in their appellate briefing to this court.) We disagree with this cramped view of error preservation. "When deciding if a verdict is inconsistent, we liberally construe the jury's verdict to give effect to the jury's intention and harmonize the jury's answers if possible." Pavone , 801 N.W.2d at 498 ; see also State v. Maxwell , 743 N.W.2d 185, 193 (Iowa 2008) ("[W]e are allowed to review the record to determine whether a proper basis exists to affirm the district court's denial of Maxwell's motion for new trial."). Westco cannot argue that it suffered any conceivable prejudice from the Wollesens' failure to discuss Instruction No. 29 when it opposed Westco's motion for new trial. The verdicts and the trial were already a done deal.
For these reasons, we hold the district court properly denied Westco's motion for new trial based on inconsistent verdicts.
C. Trial to a Jury or to the Court? Westco contends the district court erred in denying its motion to try equitable issues in equity first rather than submitting all liability claims to the jury. Of course, numerous authorities establish that law issues are for the jury and equity issues are for the court. See Weltzin v. Nail , 618 N.W.2d 293, 296 (Iowa 2000) ("[T]here is no right to a jury trial generally in cases brought in equity."); see also *226 Iowa Code § 611.10 ("Where the action has been properly commenced by ordinary proceedings, either party shall have the right, by motion, to have any issue heretofore exclusively cognizable in equity tried in the manner hereinafter prescribed in cases of equitable proceedings...."); Iowa R. Civ. P. 1.903(1) ("Issues for which a jury is demanded shall be tried to a jury unless the court finds that there is no right thereto....").
However, we are not persuaded there needed to be a bench trial preceding the jury trial in this case. As this case neared its trial date, it had clearly become an action at law. In large part it was a contract dispute. Each party alleged different contracts, and each was suing the other for damages. The other claims put forth by Westco-breach of fiduciary duty for which damages were sought and ongoing unlawful conduct for which damages were sought-were also legal claims. See Weltzin , 618 N.W.2d at 300 ("[A]n action seeking recovery of monetary damages will generally give rise to a right to trial by jury." (quoting 19 Am. Jur. 2d Corporations § 2465 (1986) )); see also Mertens v. Hewitt Assocs. , 508 U.S. 248, 255, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993) ("Although they often dance around the word, what petitioners seek is nothing other than compensatory damages-monetary relief for all losses [they] sustained as a result of the alleged brief of fiduciary duties. Money damages are, of course, the classic form of legal relief." (Emphasis omitted.)); Edmonson v. Lincoln Nat'l Life Ins. , 725 F.3d 406, 434-35 (3d Cir. 2013) ; Mediterranean Enters., Inc. v. Ssangyong Corp. , 708 F.2d 1458, 1462 (9th Cir. 1983) (finding that breach of fiduciary duty "has been considered an action at law when ... money damages are sought").
Likewise the Wollesens sought only damages for fraud and ongoing unlawful conduct-their remaining claims besides breach of contract. See Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc. , 507 N.W.2d 405, 410-11 (Iowa 1993) (making the distinction for statute of limitation purposes between a fraud action at law requesting money damages and an action at equity requesting equitable relief).
Approximately one month before trial was set to begin, and after the deadline for amending pleadings had passed, Westco attempted to make this lawsuit appear to be more of an equity action by moving to file an amended petition. This amendment sought to "specify that [Westco']s general request for equitable relief include[d] the equitable remedies of rescission and restitution." The district court denied this amendment. Among other things, the court noted that summary judgment had previously been granted to the Wollesens on Westco's unjust enrichment claim. See State ex rel. Palmer v. Unisys Corp. , 637 N.W.2d 142, 154 (Iowa 2001) (noting that unjust enrichment is "equitable in nature" and "serves as a basis for restitution"). Westco has not appealed the denial of this motion to amend.
Thus, we are left with the question of whether the district court erred in holding a jury trial first in a case involving damages claims with some potentially lurking equitable issues. We think not. "[I]f an action was brought at law, and an equitable defense raised, that would not invoke equity jurisdiction automatically." Weltzin , 618 N.W.2d at 298. Rescission and restitution are not really even defenses but are more properly characterized as additional remedies , and it is questionable whether they remained in the case. If they did remain, the district court had the discretion to deal with these matters later, after the jury returned its verdicts.
*227 In Morningstar , 255 N.W.2d 159, we confronted-similar to here-a fairly complex dispute involving various claims, counterclaims, and third-party claims. Among other things, the plaintiffs sought damages for a period of time they had been wrongfully deprived of a parcel of property, while certain defendants sought to quiet title to the same property in themselves. Id . at 160-61. The district court severed the quiet-title action from the main action and ordered it tried first. Id. at 161. The plaintiffs were granted leave for an interlocutory appeal, claiming this order "deprive[d] them of their right to trial by jury." Id. at 160.
We reversed and remanded. Id . We stated that the "right to trial by jury is to be preserved and should not be impaired except for compelling reasons." Id . at 161. We added,
Although it has been said that equitable issues should be tried first, this is not an inflexible rule. We have several times expressed the view that the case which is most likely to dispose of the whole controversy should be tried first in order to avoid an unnecessary second trial.
Id . We held that the district court abused its discretion and should have tried the main action at law before the equitable quiet-title claim. Id. at 162. As we explained, "Not only will that probably dispose of the whole case, but the opposite result effectively takes away Morningstar's right to trial by jury." Id . ; see also Matter of Brady's Estate , 308 N.W.2d 68, 70 (Iowa 1981) (noting a preference for jury trial but characterizing it as "less influential when separate cases rather than split issues are involved").
The same principle applies here. The district court did not abuse its discretion in refusing to allow the equity tail to wag the law dog. (This assumes there even was an equity tail.) The main action was at law, and trying it first was both more economical and had the effect of fully preserving the parties' jury-trial rights. As it turned out, the jury trial disposed of the entire case, except for the single claim as to which we have reversed.
IV. Conclusion.
For the foregoing reasons, we affirm in part and vacate in part the decision of the court of appeals. We also affirm the judgment of the district court, except for the summary judgment granted to Westco on the Wollesens' counterclaim under Iowa Code section 706A.2(5)(a ). As to this claim, we reverse and remand for further proceedings consistent with this opinion.
COURT OF APPEALS DECISION AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.

West Central Cooperative and Westco Agronomy Co., L.L.C. will be referred to collectively as "Westco."

We refer to Bill Wollesen, Kristi Wollesen, John Wollesen, and Iowa Plains Farms collectively as "the Wollesens."

The statute broadly defines "specified unlawful activity" as follows:
"Specified unlawful activity " means any act, including any preparatory or completed offense, committed for financial gain on a continuing basis, that is punishable as an indictable offense under the laws of the state in which it occurred and under the laws of this state.
Iowa Code § 706A.1(5). As we have previously noted, this broad definition represents a significant expansion of the model act's intended scope. See State v. Olsen , 618 N.W.2d 346, 349-50 (Iowa 2000) ; see also Anna T. Stoeffler, Note, Iowa's State RICO Statute: Wreaking Havoc on Iowa's Criminal Justice System , 102 Iowa L. Rev. 825, 837 (2017). The model act was designed for "state offenses that represent the key components of ongoing criminal networks." Olsen , 618 N.W.2d at 349 (quoting Model Ongoing Criminal Conduct Act § 4(e ) cmt. (1993)).

In Godfrey v. State , 898 N.W.2d 844, 871 (Iowa 2017), we stated that Hensler "enforced the Iowa due process clause." However, Hensler was an action under 42 U.S.C. § 1983 (2006), involving claims under the United States Constitution. 790 N.W.2d at 578, 579-80.

Other defenses may be available to Westco. The claim asserted by the Wollesens appears to be somewhat unusual in that Westco is not alleged to have supplied a product or service to facilitate separate unlawful conduct. The alleged unlawful conduct consists of the terms and conditions on which this same product or service was supplied. Whether this can amount to negligent empowerment, especially when the jury found by special verdict that Westco had not engaged in ongoing unlawful conduct itself , is an open question. The defense of in pari delicto may also be available. See Iowa Code § 706A.3(7).

The jury also rejected the Wollesens' ongoing unlawful conduct claim against Westco.