**IN THE COURT OF APPEALS OF IOWA**

No. 18-2059
Filed November 27, 2019

**THOMAS KOHN,**
        Plaintiff-Appellant,

**vs.**

**JOSEPH MUHR,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Woodbury County, Duane E.

Hoffmeyer, Judge.


        Thomas Kohn appeals the district court's ruling that he falls within the

definition of debtor for purposes of a harvester's lien. **AFFIRMED.**


        Peter J. Leo and Bradley Nelson of Norelius Nelson Law Firm, Denison, for

appellant.

        Scott L. Halbur, Lance Lange, and Angela Morales of Faegre Baker Daniels

LLP, Des Moines, for appellee.


        Heard by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

Thomas Kohn appeals the district court's decision granting Joseph Muhr's motion for summary judgment and denying Kohn's own motion for partial summary judgment regarding his "debtor" status in a harvester's lien claim. We find Kohn is a debtor within the meaning of Iowa Code section 571.1B (2017) and affirm.

## I.  Background Facts & Proceedings

Kohn operates a row-crop farm operation in Woodbury and Plymouth counties, farming over 14,000 acres of land owned and rented by Kohn and his son, Anthony.[1] Kohn provides all the farming services on Anthony's property. In exchange, Anthony provides labor to Kohn's farm operation and pays Kohn approximately $400,000 per year.[2]

Muhr provides farming services, including planting and harvesting, to farmers.

In the fall of 2016, Kohn arranged for Muhr to harvest nearly 2000 acres of corn. Before the work started, Kohn provided Muhr with crop-insurance maps specifying the fields to be harvested; the maps identified Anthony as the insured party. Kohn directed Muhr to deliver approximately 250,000 bushels of the harvested grain to a nearby elevator in Kohn's name. Muhr also delivered grain to a storage bin in Cushing, Iowa, owned by Kohn and his wife, where it was stored with Kohn's grain.[3] According to Kohn, the grain delivered to the elevator was

---

[1] Estimates in the record show Kohn farming between 6500 and 8100 acres, and Anthony farming 7000 to 7500 acres of land.

[2] In bad years, Kohn would delay or forgive the cash payment from Anthony. Anthony did not own his own harvest equipment at the time and did not budget separately to pay for machine hire or custom harvesting.

[3] Additional deliveries were made in Anthony's name to an ethanol plant and to private storage bins on one of their farms.

Anthony's when harvested. Then, prior to delivery, he and Anthony completed an even exchange on paper for grain Kohn had stored in the Cushing storage bin. Kohn sold the grain immediately upon delivery to the elevator by Muhr.

Muhr started harvesting in November 2016 and, following numerous weather-related delays, completed his work on April 8 or 9, 2017. Upon completing his work, Muhr went to Kohn for payment. Neither Kohn nor Anthony paid Muhr for his harvesting work within ten days of completion.[4]

On April 17, 2017, Muhr filed a financing statement with the Iowa Secretary of State identifying both Kohn and Anthony as debtors under Iowa Code chapter 571.

On May 5, Kohn notified Muhr he was refusing to pay him and raised an alleged performance issue.

Muhr sent Kohn a demand letter on May 26.

On June 20, Kohn and his bank requested Muhr remove Kohn's name from the financing statement, asserting the crop Muhr harvested was Anthony's and the financing statement was preventing Kohn from obtaining funds to meet a margin call on a commodity futures trading account.[5] Kohn indicated Muhr would be paid by Anthony once they reached an agreement on "a fair and reasonable payment" for his work.

On June 30, Anthony paid Muhr for his harvesting services. Muhr immediately terminated the financing statement.

---

[4] A harvester must file a financing statement within ten days of the last day of providing harvesting services in order to perfect a harvester's lien. Iowa Code § 571.3.

[5] There is no evidence in the record indicating Kohn filed an information statement on the financing statement to indicate wrongful filing pursuant to Iowa Code section 554.9518.

In August, Kohn filed suit against Muhr for wrongfully filing a financing statement, alleging Kohn's commodity contracts were involuntarily liquidated and he incurred financial damages when reestablishing his place in the grain trading market after Muhr terminated the financing statement. Kohn requested statutory and punitive damages.[6] Muhr counterclaimed for breach of contract, seeking reimbursement for reasonable expenses and a declaratory judgment the filing of his financing statement was authorized under section 571.3.

In June 2018, the parties filed cross-motions for partial summary judgment on the question of whether, as a matter of law, Kohn was a debtor for purposes of a harvester's lien. The district court determined Kohn was a debtor under the statute, granted Muhr's motion for partial summary judgment, and denied Kohn's motion. In particular, the court noted Kohn personally contracted Muhr's harvesting services and took possession of and commingled his own grain with grain harvested by Muhr.

Kohn appeals.

## II.    Standard of Review

"We review a district court's ruling on a motion for summary judgment for correction of errors at law." *Westco Agronomy Co. v. Wollesen*, 909 N.W.2d 212, 218 (Iowa 2017). "Summary judgment is proper when the moving party has shown there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 218–19. "We view the evidence in the light most favorable to the nonmoving party" and "draw all legitimate inferences the

---

[6] Kohn requested a total of $917,490.60 in damages—$305,830.20 in compensatory and statutory damages and double that amount in punitive damages.

evidence bears." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018).

### III.    Error Preservation

Muhr claims Kohn failed to preserve error on the three, independently-sufficient debtor findings by the district court.  Muhr argues Kohn's statement of error preservation did not comply with Iowa Rule of Appellate Procedure 6.903(g)(1), which  requires "[a] statement addressing how the issue was preserved for appellate review, with references to the places in the record where the issue was raised and decided."  To the extent each issue was decided by the district court, error was adequately preserved.  *See Young v. Iowa City Cmty. Sch. Dist.*, ___ N.W.2d ___, ___, 2019 WL 5275026, at *5 (Iowa 2019).

### IV.    Analysis

Kohn argues he did not qualify as a "debtor" under Iowa Code section 571.1B as a matter of law.

This case requires applying the well-established principles of statutory construction:

> When the plain language of a statute . . . is clear, we need not search for meaning beyond the statute's express terms.  We may presume the words contained within a statute have the meaning commonly attributed to them.  We can resort to rules of statutory construction, however, when a statute's meaning is ambiguous.  "A statute is ambiguous if reasonable persons could disagree as to its meaning."

*Oyens Feed & Supply, Inc. v. Primebank*, 879 N.W.2d 853, 859 (Iowa 2016) (citations omitted).

Section 571.1B authorizes a harvester to file an agricultural lien against the person for whom they harvest:

> A harvester shall have an agricultural lien as provided in section 554.9102 for the reasonable value of harvesting services.[7] The harvester is a secured party and the person for whom the harvester renders such harvesting services is a debtor for purposes of chapter 554, article 9.[8] The lien applies to crops harvested by the harvester.

Therefore, the question is who qualifies as a "person for whom the harvester renders such harvesting services." Iowa Code § 571.1B.

Article 9 of the Iowa Uniform Commercial Code (IUCC) governs secured transactions, providing a party an interest in property to secure payment or performance of an obligation. *See C & J Vantage Leasing Co. v. Outlook Farm Golf Club, LLC*, 784 N.W.2d 753, 757 (Iowa 2010). The 2001 revisions to the IUCC, found in chapter 554 of the Iowa Code, "brought agricultural liens within the same scope and treatment as other security interests and liens under Article 9." Wyatt P. Peterson, Note, *Revised Article 9 and Agricultural Liens: An Iowa Perspective*, 8 Drake J. Ag. L. 437, 439 (2003). "Chapter 554 contains general provisions that act as default settings" unless the legislature supersedes the general provisions with more specific or narrower guidelines. *Oyens Feed*, 879 N.W.2d at 860 (determining the relationship between chapter 554 and chapter 570A agricultural liens).

Kohn claims he did not personally enter into a contract with Muhr but was instead acting as agent for Anthony and, therefore, Muhr did not provide harvesting services for him. Muhr counters Kohn never raised this agency argument in the

---

[7] "'Harvesting services' means baling, chopping, combining, cutting, husking, picking, shelling, sacking, threshing, or windrowing a crop, regardless of the means or method employed." Iowa Code § 571.1A(3).

[8] "'Debtor' means: (1) a person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor; (2) a seller of accounts, chattel paper, payment intangibles, or promissory notes; or (3) a consignee." *Id.* § 554.9102(1)(ab).

district court so error is not preserved. Even if preserved, Muhr claims Anthony was at most a third-party beneficiary to the contract between Kohn and Muhr.

It is undisputed that Kohn and Anthony had a custom farming arrangement whereby Kohn's operation would perform all farming services on Anthony's land. In the fall of 2016, Kohn did not have the capacity in workers or equipment to perform all harvesting operations on both his own and Anthony's land and hired Muhr to perform harvesting operations Kohn was responsible for.[9] Kohn conducted the negotiations with Muhr, directed all of Muhr's harvesting and delivering activities, and directed Muhr to deliver significant amounts of grain under Kohn's name or to Kohn's facilities. It was Kohn who Muhr approached for payment at the end of his harvesting activities. Indeed, the undisputed evidence shows Muhr and Anthony never had a conversation relating to the harvesting services.

Instead, Kohn's farming operation had the responsibility to harvest Anthony's fields and contracted Muhr to provide harvesting services in fulfillment of Kohn's duties to Anthony. Kohn was not merely an agent representing Anthony's interests, but was more akin to a contractor hiring a subcontractor.

Kohn's interpretation would render toothless the protections for harvesters the legislature sought to establish. We find Kohn was a "person for whom the harvester render[ed] such harvesting services" and therefore falls within the meaning of "debtor" for purposes of Iowa Code section 571.1B.

---

[9] Kohn had hired Muhr on previous occasions to perform agricultural work for him, including planting and harvesting.

Because we find the district court correctly determined Kohn to be a debtor under chapter 571 for the harvesting services provided by Muhr, we need not address Kohn's other claims.  We affirm.

**AFFIRMED.**